IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>BALTIMORE COUNTY, )<br>MARYLAND )<br>)<br>)<br>Defendant. )<br>_____) | Civil Action No. _____<br><br><br>JURY TRIAL DEMANDED |

# COMPLAINT

Plaintiff United States of America ("United States"), alleges:

1. This civil action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"). Defendant Baltimore County, through its fire department, the Baltimore County Fire Department ("BCFD"), violated Section 706 of Title VII by subjecting eleven (11) female employees to a hostile work environment on the basis of their sex. In June 2017, a male BCFD employee distributed to and solicited from other male BCFD employees nude photographs of several female BCFD employees. Following this solicitation, revealing photographs of some of the female BCFD employees were posted on an online message board. Despite having notice of the harassment that the BCFD female employees faced, BCFD failed to take immediate and appropriate corrective action to address this hostile work environment.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) and under 28 U.S.C. § 1391(b) because Defendant is located in this judicial district and the employment practices alleged to be unlawful occurred in this district.

4. On March 15, 2018, Equal Employment Opportunity Commission ("EEOC") Commissioner Chai Feldblum filed a charge against BCFD (EEOC Charge No. 531-2018-01848). Commissioner Feldblum alleged that since at least July 2017, BCFD subjected a class of female employees to a hostile work environment on the basis of their sex related to the solicitation and posting of nude or sexually suggestive photographs of female BCFD employees by a coworker, as well as BCFD's failure to take immediate and appropriate actions to correct the ongoing hostile work environment female BCFD employees faced.

5. Pursuant to Section 706 of Title VII, 42 U.S.C. § 2000e-5, the EEOC investigated the charge.

6. On February 8, 2020, the EEOC issued its Letter of Determination ("LOD") finding reasonable cause that BCFD violated Title VII. It determined that a class of female employees had been subjected to sexual harassment that created a hostile work environment, that BCFD knew of the hostile work environment as well as complaints about it, and that BCFD failed to take prompt and remedial corrective action.

7. The EEOC's conciliation efforts were unsuccessful, and the EEOC referred the matter to the Department of Justice ("DOJ") on September 22, 2020.

8. All conditions precedent to the filing of suit have been satisfied.

**PARTIES**

9. Plaintiff is the United States of America.

10. Defendant is Baltimore County. Baltimore County is a governmental entity created pursuant to the laws of the State of Maryland and is located within this judicial district.

11. BCFD is the fire department for Baltimore County. BCFD includes more than 1,000 paid emergency response personnel housed at 25 fire stations. These personnel work at incident scenes alongside volunteer firefighters from Baltimore County's 29 volunteer fire companies.

12. Baltimore County is a "person" within the meaning of 42 U.S.C. § 2000e(a), and an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## FACTUAL ALLEGATIONS

### A. Initial Solicitation of Nude Photographs of Female BCFD Employees

13. On June 26, 2017, BCFD Fire Apparatus Driver/Operator Jacob Stuart ("Stuart") received a Facebook message from an anonymous alias screen name ("Danial Bosslé") requesting nude photographs of Employee 1,[1] a female BCFD paramedic who was Stuart's ex-girlfriend.

14. The solicitor stated that he could provide photographs of six other female BCFD employees (Employees 2-7) in exchange for receipt of a nude photograph of Employee 1. The solicitation referenced an email address to be used to swap nude photographs of Employees 1-7.

15. At the time Stuart received this Facebook message, he was with BCFD Division Chief Ken Hughes responding to an incident, and Stuart immediately showed the Facebook message to Hughes. Division Chief Hughes asked Stuart to send the message to him, which Stuart immediately did.

---

[1] The United States is using pseudonyms to protect the identities of the women who have not yet been publicly identified. The United States is prepared to inform the Court of the women's identities in a manner prescribed by the Court.

16. Following his receipt of the Facebook message from Stuart on June 26, 2017, Division Chief Hughes notified BCFD Assistant Chief Jennifer Aubert-Utz about the solicitation. Division Chief Hughes also reached out to the Baltimore County Police Department's ("Police Department") cybercrimes unit. The Police Department advised Division Chief Hughes that it would monitor the situation.

17. BCFD did not take any other action at that time to internally investigate the matter or assess if or how such an incident could be indicative of ongoing sexual harassment in its workplace.

18. BCFD did not reach out to Stuart to discuss the Facebook message for over five months. Specifically, Stuart did not speak to any BCFD management until December 2017 when he was ultimately interviewed by BCFD about the solicitation.

### B. Second Solicitation of Nude Photographs of Female BCFD Employees

19. On June 27, 2017, volunteer BCFD firefighter Justin Kinsey ("Kinsey") received a Facebook message from the same anonymous alias screen name ("Danial Bosslé") that had contacted Stuart the day prior. This solicitation requested nude photographs of Employee 6, Employee 8, a female BCFD employee with whom Kinsey had a prior romantic relationship, and Employee 9, a female BCFD paramedic.

20. The Facebook message informed Kinsey that, should he comply with the request, he would receive nude photographs of Employees 1-7.

21. The Facebook message included a nude photograph that was purportedly of Employee 1 as a "show of good faith."

22. "Bosslé" then sent Kinsey a nude photograph of Employee 3.

23. Kinsey reported this information to the Police Department.

24. On or around June 30, 2017, the Police Department informed Employee 1, Employee 2, Employee 3, Employee 5 and Employee 6 of the messages and that someone was soliciting or sending nude photographs of them.

### C. BCFD Failed to Promptly Investigate the Solicitation and Distribution of Photographs.

25. On August 21, 2017, the Police Department notified BCFD Fire Chief Kyrle Preis III about the Facebook message that Kinsey received. The Police Department notified Preis that the possible source of the message (and thus the real identity of "Danial Bosslé") was BCFD Fire Specialist Steven Lee. Upon receiving this information, BCFD again did not initiate an investigation into the allegations.

26. On August 24, 2017, the Police Department first advised BCFD to refrain from conducting a concurrent internal investigation to ensure it did not interfere with the Police Department investigation.

27. Until this time, BCFD had failed to investigate the situation in the approximately two months between June 30, 2017, when it learned of the Facebook message sent to Stuart and August 24, 2017, when the Police Department advised it not to conduct a concurrent internal investigation. Thus, BCFD did not have to change its course of conduct following the Police Department's directive because it had not taken *any* steps to investigate the matter prior to August 24, 2017.

28. BCFD's failure to investigate the situation or reinforce its prohibitions against harassment perpetuated the hostile work environment faced by Employees 1-9.

### D. BCFD Failed to Communicate with Employees 1-9 Regarding the Solicitation and Distribution of Photographs.

29. At no time during the Police Department's investigation did any Police Department official ask BCFD to refrain from communicating with Employees 1-9.

30.     Nevertheless, BCFD did not communicate with Employees 1-9 during the Police Department's investigation, instead leaving them to speculate and piece together information related to the status of the investigation from their work colleagues or through the work rumor mill.

31.     This lack of updates on the status of the Police Department's investigation into Lee's actions was particularly concerning given that Lee's victims typically shared sleeping quarters, and sometimes even locker rooms, with their male co-workers.  Between June 30, 2017, and October 3, 2017, Lee's victims feared that they were sharing intimate quarters with a male co-worker who was soliciting and sharing nude or inappropriate photographs of them.

32.     Around this same time period, there were also rumors that cameras were placed in locker rooms to secretly videotape BCFD employees.  The Police Department investigated these rumors during its investigation of the solicitation and distribution of photographs, but it did not update the victims of Lee's actions on the results of the camera investigation.  Thus, the victims continued to fear that they were being videotaped when using the locker rooms.

33.     Also around this time period, the Police Department investigated the posting of photographs of BCFD employees on an online message board.  Specifically, on or around August 2017, Employee 2 sent the Police Department a link to a "revenge porn" message board site referred to as "Anon-IB" where photographs of female BCFD employees were posted without their knowledge or consent.  These photographs included photographs of Employee 2, Employee 9, Employee 10, and Employee 11 in bikinis.

34.     Even after the Police Department notified BCFD on August 21, 2017, of the Facebook message received by Kinsey and that Lee was the possible source of the message, neither BCFD nor the Police Department assured the victims of Lee's actions that they were not working on the

same shift as the suspected culprit and living in close quarters with a male co-worker who was soliciting and sharing revealing photographs of them (and possibly videotaping them based off of the rumors of video cameras being placed in the locker room).

### E. Police Department Confirms Lee Solicited and Distributed Nude and Inappropriate Photographs of BCFD Co-Workers.

35. On or around September 27, 2017, the Police Department confirmed that Lee was the source of the Facebook messages at issue. Lee confirmed as such when the Police Department interviewed him that day.

36. On October 2, 2017, the Police Department cleared BCFD to take internal action against Lee. BCFD suspended Lee that day pending the results of its internal investigation.

37. On October 3, 2017, over three months after the first solicitation of nude photographs, BCFD finally updated some of the victims on the Police Department's investigation. BCFD Chief of Staff Jennifer Werry Stewart contacted seven (7) of the eleven (11) victims, Employees 1-7, via telephone. Stewart informed Employees 1-7 that (i) Lee was the individual behind the messages soliciting and distributing the photographs at issue; (ii) BCFD suspended him; (iii) he would not be returning to work soon, if ever; and (iv) BCFD would soon commence its own investigation.

38. Stewart further advised Employees 1-7 that they could contact the Employee Assistance Program ("EAP"), a work-based intervention program designed to assist employees in resolving personal problems that may be adversely affecting the employee's workplace performance. Stewart did not share any other substantive information regarding the situation with the employees.

39. Neither Stewart nor anyone else at BCFD contacted Employees 8-11 to update them on the investigation.

### F. BCFD's Investigation and Response Were Inadequate.

40. BCFD began interviewing relevant BCFD employees as part of its own investigation into the harassing actions at issue on November 6, 2017, more than four months after it became aware of these actions.

41. On November 8, 2017, Lee submitted his resignation. BCFD accepted his resignation without considering whether to reject it and instead terminate his employment.

42. BCFD did not interview Lee about his solicitation and distribution of inappropriate photographs.

43. Additionally, BCFD failed to follow up with the Police Department as to key details of the police interview with Lee. Accordingly, BCFD failed to determine key specifics such as how Lee obtained the photographs at issue, how many photographs he had in his possession, which BCFD female employees were depicted in the photographs, and whether he still had any nude or inappropriate photographs in his possession (and thus the ability to continue distributing them).

44. On October 6, 2017, four days after BCFD suspended Lee pending the results of its internal investigation, a BCFD Fire Lieutenant received a text message from an unidentified number appearing to distribute photographs of Employee 1—showing that the distribution of photographs may have continued even after the Police Department identified Lee as the culprit behind the initial Facebook messages at issue. Yet, upon information and belief, BCFD did not interview this Fire Lieutenant as part of its internal investigation into Lee's actions or as part of any other investigation.

45. BCFD also failed to interview Employee 8 as part of its investigation despite the fact that she was a victim of Lee's actions.

46. On March 26, 2018, BCFD completed its investigation and sent an approximately half-page letter to Employees 1-4, 6-7, and 9-10 notifying them as such. The letter shared only that (i) BCFD completed its investigation; (ii) Lee had resigned; (iii) "no evidence was uncovered to indicate that there were other persons involved with or assisting Lee;" and (iv) no additional violations of law, fair practices policy, or fire department standard operating rules, procedures, and regulations were discovered.

47. BCFD did not provide any other details in the letter regarding the information uncovered during its investigation, including whether it found evidence of video cameras being placed in locker rooms to videotape female employees or whether it identified who was behind the posting of photographs of female employees on the Anon-IB website.

48. In response to Lee's actions, BCFD conducted a 15-minute online sexual harassment training in August 2018.

49. BCFD did not take any other substantive action in response to these incidents.

### G. BCFD's Failure to Take Appropriate Remedial Action to Stop the Harassment Led to Significant Emotional Distress for the Victims.

50. BCFD's unlawful actions in response to Lee's actions have caused the victims to endure emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and other nonpecuniary losses.

51. BCFD's failure to take appropriate actions in response to Lee's actions and the related hostile workplace environment was both objectively hostile to the victims and subjectively perceived as hostile by the victims.

**COUNT I**
Violation of Title VII, 42 U.S.C. § 2000e-2(a)
Hostile Work Environment Sexual Harassment

52. Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1-51 above.

53. BCFD subjected female BCFD Employees 1 to 11 to a hostile work environment on the basis of their sex related to the solicitation and distribution of nude and other inappropriate photographs of female BCFD employees and failed to take immediate and appropriate action to correct the ongoing hostile work environment that those employees faced, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

54. The offending conduct was unwelcome and because of the employees' sex.

55. The offending conduct was sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive working environment that was imputable to their employer, BCFD. The conduct was objectively hostile or abusive to a reasonable person, and the victims of the conduct perceived it to be hostile or abusive.

56. At all relevant times, BCFD possessed both actual and constructive knowledge of the hostile work environment to which the victims of the offending conduct were subjected.

57. Despite its knowledge, BCFD failed to take appropriate action reasonably calculated to end the harassment that created the hostile work environment.

58. As a direct and proximate result of BCFD's failure to take appropriate corrective steps reasonably calculated to address the sexual harassment, BCFD Employees 1 to 11 have been harmed. They have suffered emotional distress, humiliation, embarrassment, anguish, loss of enjoyment of life, and other nonpecuniary losses.

**PRAYER FOR RELIEF**

59. The United States prays that the Court enter judgment against Defendant and grant the following relief:

   a. Declare that BCFD subjected the victims of the offending conduct to a sexually hostile work environment, in violation of Title VII;

   b. Enjoin BCFD from causing, creating, or permitting a sexually hostile work environment;

   c. Order BCFD to develop and implement appropriate and effective policies, procedures, and practices designed to prevent and correct sexual harassment of female employees, including but not limited to: mandatory sexual harassment training that is conducted on a periodic basis, at least annually, and that is substantively sufficient and compliant with Title VII; procedures ensuring that the investigation of sexual harassment claims is not excessively controlled by command officials who complainants and victims may be reticent to speak freely with, and that the investigation has significant input from individuals, such as human resources professionals, who possess greater expertise and experience with Title VII and the laws regarding sexual harassment;

   d. Award compensatory damages to the victims of the sexual harassment to fully compensate them for their injuries, pain, and suffering caused by BCFD's unlawful conduct, pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a;

   e. Award any additional equitable relief necessary to make the victims whole, including back pay and other lost benefits; and

f.  Award such additional relief as justice may require, together with the United States' costs and disbursements in this action.

## JURY DEMAND

The United States hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

Dated:  September 5, 2023

EREK L. BARRON
United States Attorney
District of Maryland

*/s/ Sarah Marquardt*
SARAH MARQUARDT
MD Bar #17294
Assistant U.S. Attorney
District of Maryland
36 S. Charles St., 4th Fl.
Baltimore, MD 21201
Phone: (410) 209-4801
Fax: (410) 962-2310
Sarah.Marquardt@usdoj.gov

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD
Chief
Employment Litigation Section

CLARE F. GELLER
Deputy Chief
Employment Litigation Section

*/s/ Shan R. Shah*
SHAN R. SHAH, MD Bar, no number issued
SHARION SCOTT, DC Bar #1617438
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E.
Washington, DC 20530
Phone (Shah): (202) 598-9621
Phone (Scott): (202) 598-5592
Fax: (202) 514-1005
Shan.Shah@usdoj.gov
Sharion.Scott@usdoj.gov

Counsel for the United States