## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

UNITED STATES OF AMERICA,     )
    )
          Plaintiff,     )
    )
v.     )     Civil Action No. 1:23-cv-02418-RDB
    )
BALTIMORE COUNTY,     )
MARYLAND     )
    )     JURY TRIAL DEMANDED
    )
          Defendant.     )
    )

## ~~[PROPOSED]~~ CONSENT DECREE

## I.    INTRODUCTION

This action was brought by Plaintiff United States of America ("United States") against

Defendant Baltimore County, Maryland ("County") to enforce the provisions of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), following the United

States' receipt from the Equal Employment Opportunity Commission ("EEOC") of an EEOC

Commissioner's Charge against the County. This Court has jurisdiction over this action under 42

U.S.C. § 2000e-5(f) and 28 U.S.C. §§ 1331 and 1345.

In its complaint, the United States alleges that the County violated Section 706 of Title VII

by subjecting eleven (11) female employees to a hostile work environment on the basis of their sex.

According to the complaint, in June 2017, a male employee of the Baltimore County Fire

Department ("BCFD") distributed to and solicited from other male BCFD employees nude

photographs of several female BCFD employees on a social media platform. Following this

solicitation, revealing photographs of some of the female BCFD employees were posted on an

online message board. The United States alleges that despite having notice of the sexual

harassment that BCFD female employees faced, BCFD failed to take immediate and appropriate

corrective action to address this hostile work environment.

The Parties agree to voluntarily enter into this Consent Decree ("Decree") and settle this action without the burdens and risks of protracted litigation. The Parties acknowledge their shared interest and the County's stated commitment to develop improved policies, procedures, and trainings to ensure that BCFD is a workplace free of sexual harassment.

The Parties agree that this Court has jurisdiction over the Parties and the subject matter of this action. This Decree, being entered into with the consent of the Parties, shall not constitute an adjudication or finding on the merits of the case, nor be construed as an admission of liability by the County.

Subject to the Court's approval of this Decree, the Parties waive findings of fact and conclusions of law on the merits of this case and further agree to entry of this Decree as a final and binding agreement between them with regard to all claims asserted in the United States' complaint.

## II.    FINDINGS

Having examined the terms and provisions of this Decree, the Court finds that it has jurisdiction over the subject matter of and the Parties to this action; and in resolution of this action, the Parties hereby AGREE, and the Court expressly APPROVES, ENTERS, and ORDERS the following:

## III.   PARTIES AND DEFINITIONS

1.     "Days" refers to calendar days, not business days, unless otherwise stated.

2.     "Date of Entry" is the date on which the Court signs and enters this Decree as a final order of the Court.

3.     "Employee" or "Employees," for purposes of this Decree, refers to anyone who is a classified service worker, manager, and/or supervisor within BCFD. The definition of "employee" or "employees" also includes contractors as well as, in some circumstances,

2

volunteers of BCFD.  The definition of "employee" or "employees" also covers classified service workers, managers, and/or supervisors of BCFD who have secondary employment or secondary service with the Baltimore County Volunteer Firefighters Association ("BCVFA").

4.　　"Party" or "Parties" refers to the United States and/or the County.

5.　　"Fair Practices Policy" refers to BCFD's policies and procedures related to discrimination, retaliation, and sexual harassment, including its policies and procedures for reporting and investigating complaints of discrimination, retaliation, and sexual harassment.

6.　　"Relief Participants" are Employees 1 through 11 as referenced in the United States' complaint filed in this action.

## IV.　PURPOSES OF THE CONSENT DECREE

7.　　The purposes of this Decree are to:

　　　a.　Provide non-monetary remedies, including injunctive and equitable relief, to ensure that BCFD is a workplace free of sexual harassment, discrimination based on sex, and retaliation in compliance with Title VII; and

　　　b.　Provide monetary relief to the Relief Participants for the harm they experienced for the hostile work environment based on sex set forth in the United States' complaint.

## V.　INJUNCTIVE & EQUITABLE RELIEF

8.　　In accordance with the terms of this Decree, the County shall not:

　　　a.　Engage in any act or practice that (i) discriminates against any employee on the basis of sex, (ii) constitutes sexual harassment, or (iii) retaliates against any employee in violation of Title VII; or

　　　b.　To the extent proscribed by Title VII, discriminate or retaliate against any person because that person participated in or cooperated with the United States' investigation

3

of the County, participated in the litigation of this case, complained about or opposed the challenged employment practices, or received or sought relief or otherwise benefited from the terms of this Decree.

## VI. REVISED FAIR PRACTICES POLICY

9. Within one hundred and twenty (120) days of the Date of Entry of the Decree, BCFD shall submit to the United States for review and approval, a revised Fair Practices Policy. The revised policy shall include at a minimum:

   a. a definition and examples of sexual harassment, including examples of sexually harassing conduct on social media;

   b. a statement explaining that conduct that occurs on social media can violate the County's policy even if such use is off-site and not on work time or work computers/devices;

   c. a description of the complaint process including the manner in which a complainant may make a complaint of discrimination, harassment, or retaliation, and the position titles and contact information of all individuals who are authorized to accept complaints;

   d. an explanation of the importance that complainants promptly report any discrimination, harassment, or retaliation complaints;

   e. a description of the procedures for appropriate response to complaints, including follow-up and monitoring to ensure that discrimination, harassment, and retaliation does not continue where inappropriate conduct has been reported;

   f. a description of the complaint investigation process. This process, as further set forth below, will include the person or persons by job title who may conduct the investigation and make conclusions about the results of the investigation, including

4

the department to which the person or persons belongs, to whom, by job title, he or she reports, and his or her jurisdiction;

g.  a description of the appropriate discipline policies, procedures, and guidelines that are designed to promptly correct discrimination, harassment, and retaliation;

h.  a requirement that supervisors or managers who witness or learn of possible discrimination must take prompt action to report and address the issue; and

i.  a reference to accountability measures, including any appropriate discipline, to ensure that supervisors or managers implement the policies relating to reporting, investigating, preventing, and correcting instances of discrimination.

j.  The collective bargaining implications, if any, of any new accountability measure of the revised policy.

## VII.    REVISED COMPLAINT AND INVESTIGATION PROCEDURES

10.  Within one hundred and twenty (120) days of the Date of Entry of the Decree, BCFD shall submit to the United States, for review and approval, an investigative process for complaints of prohibited forms of discrimination, harassment, and retaliation that shall include, at a minimum:

a.  Written procedures for a prompt, thorough, and objective investigation of such complaints.  The investigative process shall include determining whether the alleged wrongdoer has any prior discrimination, harassment, or retaliation complaints against them from BCFD employees or any other individuals.  The written procedures shall also describe the standards and criteria that must be considered when making findings at the conclusion of the investigation;

b.  Provisions mandating that individuals who investigate such complaints should be outside of the chain of command of the alleged wrongdoer and complainant.

5

Individuals who investigate complaints of prohibited forms of discrimination, harassment, and retaliation shall not be under the direct or indirect supervision of the alleged wrongdoer. Additionally, individuals who investigate complaints of prohibited discrimination, harassment, and retaliation shall not be the direct or indirect supervisor of the alleged wrongdoer or the complainant;

c.   The issuance of a notice early in the investigation process to preserve evidence. The notice must be issued to all individuals working at BCFD that may have evidence relevant to the complaint, and it must inform them that failure to preserve relevant evidence may result in discipline;

d.   Processes for documenting investigation steps and findings. All investigations of complaints of prohibited forms of discrimination, harassment, or retaliation must include a written report of how the investigation was conducted, the findings from the investigation, and the steps taken to remedy any discrimination, harassment, or retaliation found during the investigation. BCFD shall store these reports in an electronic manner so that they are searchable; and

e.   Procedures that should be taken at the conclusion of the investigation of a discrimination, harassment, or retaliation complaint. These procedures should require that within thirty (30) days of the completion of an investigation, BCFD inform the complainant in writing of its investigative findings, along with a summary of the information gathered during the investigation and all actions taken as a result of the investigation.

f.   BCFD shall complete investigations of prohibited forms of harassment and/or retaliation within ninety (90) days of the date the investigations commence. If BCFD requires longer than ninety (90) days to complete an investigation, it must explain, in

6

writing, to the complainant why the investigation will take longer than ninety (90) days to complete.

g.  BCFD shall develop an investigative manual that encapsulates in writing its policies and procedures relating to investigations of discrimination, harassment, and retaliation complaints.

h.  The revised complaint procedure will be implemented under this section according to the County's normal process.

## VIII.  IMPLEMENTATION OF REVISED FAIR PRACTICES POLICY AND COMPLAINT INVESTIGATION PROCESS

11.  The United States will notify Defendant in writing within ninety (90) days of receipt of any proposed Fair Practices Policy and complaint investigation process whether it has any objections to the proposed policies.  Any disagreement between the United States and the Defendant regarding the language of the proposed policies may be resolved as outlined in Paragraph 41.

12.  Within twenty-one (21) days of receipt of the United States' approval of the revised Fair Practices Policy and complaint investigative process, or of any objections being resolved, BCFD will implement them by:

a.  Distributing the revised policies and practices to all BCFD employees, including coordinating with the Baltimore County Volunteer Firefighter's Association ("BCVFA") to distribute the policies and practices to volunteers;

b.  Documenting that each employee has received the revised policies and practices; and

c.  Posting the revised policies and practices on its website and in its facilities.

d.  Thereafter, BCFD will distribute the revised policies and practices to each new employee, including making good faith efforts to coordinate with BCVFA for

distribution of the revised policies and practices to volunteers, within twenty-one (21) days of hire.

## IX.    IMPLEMENTATION OF REVISED TRAINING

13.    BCFD shall provide all employees with live, interactive, annual training on sexual harassment. This training shall be specifically tailored to the BCFD workplace and involve scenarios specific to the BCFD workplace.

14.    The training shall be at least two (2) hours in length.

15.    BCFD shall provide new employees with this live, interactive training on sexual harassment within forty-five (45) days of their date of hire.

16.    BCFD's training on discrimination, harassment, and retaliation shall explain the law and policies governing discrimination, harassment, and retaliation and the specific conduct considered to violate Title VII, the process for filing and investigating harassment complaints, and the discipline that can be issued to individuals who engage in prohibited discrimination, harassment, or retaliation. It shall further include bystander training.

17.    BCFD shall annually train supervisors and managers on properly responding to instances of discrimination, harassment, or retaliation. This includes, but is not limited to, training on how to properly document instances of harassment. It shall also include a discussion of any discipline that managers and supervisors may be subject to for failing to properly respond to instances of discrimination, harassment, or retaliation.

18.    BCFD shall provide live, interactive, annual training to individuals assigned to investigate complaints of harassment, discrimination, or retaliation. This training will include an overview of BCFD's process for filing and investigating complaints of discrimination, harassment, or retaliation, the role and responsibilities of investigators of such complaints, an explanation of Title VII's prohibition of discrimination, harassment, and retaliation,

8

investigative techniques (such as the gathering and analysis of evidence, including interviewing witnesses, gathering and reviewing documentary and electronic evidence, and making credibility determinations), and case management issues (including information on practical techniques concerning the timely investigation of complaints).

19. Within one hundred and twenty (120) days of implementation of the revised Fair Practices Policy and complaint investigation process outlined in Paragraphs 9-10, BCFD shall submit to the United States, for review and approval, the proposed curriculum for the trainings set forth in Paragraphs 13-18, including the content of the training, the training methodology (including the plan for interactive participation and engagement), as well as the name(s) and qualifications (including resume(s)) of the individual(s) who they propose will serve as the trainers. BCFD may elect to procure the individual or group of individuals to provide the trainings, with concurrence of the United States.

20. The United States will notify Defendant in writing within thirty (30) days of receipt of any proposed trainings and trainers whether it has any objections to the proposed trainings or person(s) providing the trainings. Any disagreement between the United States and the Defendant may be resolved as outlined in Paragraph 41. BCFD shall provide the training outlined in Paragraphs 13 to 18 within ninety (90) days of receiving approval or resolution of any objections to the training or proposed trainers.

21. BCFD will document that each employee has completed the training.

22. The training described in this Decree shall be mandatory. BCFD shall inform its employees as such and warn them that failure to complete the training could subject them to discipline.

23. The training described in this Decree shall be crafted and provided by qualified individuals with substantive knowledge regarding Title VII.

24. BCFD will make a good faith effort to coordinate with BCVFA to provide the sexual

harassment training referenced in this section to volunteers. BCFD will make a good faith effort to do so annually for incumbent BCVFA volunteers and within forty-five (45) days of the beginning of their service as a BCVFA volunteer for new volunteers.

## X.  ADMINISTRATION OF CLIMATE OR PULSE SURVEY

25.  Within ninety (90) days of the Date of Entry of the Decree, the United States and BCFD, and any experts retained by either Party, will meet to develop a survey plan to design and administer a workplace climate or pulse survey (i.e., an anonymous, short set of questions administered frequently to gauge employees' views on a myriad of issues in the workplace) to be administered to all individuals working at BCFD including making good faith efforts to coordinate with BCVFA for distribution of the survey to volunteers, that gathers information, including but not limited to:

  a.  sexual harassment in the workplace;

  b.  experiences with the County and BCFD's policies and procedures regarding sexual harassment and related training;

  c.  comfort level with using BCFD's complaint procedure for sexual harassment complaints; and

  d.  experiences with investigations of sexual harassment complaints.

26.  Within thirty (30) days of the meeting set forth in Paragraph 25, BCFD will submit to the United States, a survey plan including but not limited to:

  a.  the timeline and frequency of surveys;

  b.  description of the surveys expected to be administered;

  c.  method of surveys; and

  d.  methodology and timeline to review survey data and formulate response plan for each survey.

10

27. BCFD shall provide each proposed climate or pulse survey to the United States for review and approval, according to the schedule set out in the survey plan. The United States will have twenty-one (21) days to review and approve or object to the workplace survey under the terms outlined in Paragraph 41. BCFD shall administer the workplace survey within fourteen (14) days of the United States' approval or resolution of any objections to the workplace survey.

28. According to the timetable set forth in the survey plan, BCFD will formulate an action plan to address the issues detailed in the survey and provide the action plan to the United States. The parties will set up status calls to discuss and agree on the content of any action plan. The United States will have twenty-one (21) days to review and approve or object to the action plan. BCFD shall implement the action plan within fourteen (14) days of the United States' approval or resolution of any objections to the action plan.

## XI.   MONETARY RELIEF

29. In settlement of the United States' claims for relief, the County agrees to pay a total of Two Hundred and Seventy-Five Thousand Dollars ($275,000) to the Relief Participants.

30. The County agrees to pay the Relief Participants in accordance with a final distribution list to be provided by the United States to the County. The United States will determine claim shares for each Relief Participant based on an individualized analysis utilizing factors relevant to calculating compensatory damages.

31. To receive relief under this Decree, each Relief Participant must execute a release in a format materially the same as set forth in Exhibit A and return it to the United States. The United States shall provide the Relief Participants a date by which these forms must be returned.

32. The United States will provide the County with copies of the executed releases and the final

distribution list within ninety (90) days of the Date of Entry of the Decree.   The County agrees to accept reasonable copies of signed releases in place of the originals.

33.     Within thirty (30) days of the County's receipt of the executed releases and final distribution list from the United States, the County will issue checks to each Relief Participant on the distribution list for the monetary settlement.   Each check will be made payable to the individual Relief Participant in the amount listed by the United States in its final distribution list.

34.     Each Relief Participant's individual monetary relief payment is attributable to compensatory damages and is pursuant to and within the statutory limitations of Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981.   The County will issue each Relief Participant an IRS Form 1099 for the amount of her individual monetary relief at the time of payment.

35.     Within five (5) days of the County's issuance of the monetary settlement checks as described in Paragraph 33, the County will confirm in writing the issuance to the United States.  The County shall keep records of any checks that are returned as undeliverable and promptly notify the United States.  The Parties shall attempt to identify updated mailing addresses as soon as practicable.  If one of the Parties identifies an alternative mailing address, the County shall re-mail the monetary relief payment within two (2) business days.

## XII.    RECORDS RETENTION

36.     BCFD will retain the following documents and information during the term of this Decree, or for the period of time required by other applicable records retention requirements, whichever is longer:

     a.   Documentation that, as required by Paragraph 12, each employee received the revised Fair Practices Policy and that BCFD made good faith efforts to coordinate with

BCVFA for each BCVFA volunteer to receive the revised Fair Practices Policy;

b.  The materials related to the revised training on the revised Fair Practices Policy pursuant to Paragraphs 13 through 24 and provided to its employees;

c.  Documentation that each employee received the training on the revised Fair Practices Policy as required by Paragraph 21 and that BCFD made a good faith effort to coordinate with BCVFA as required by Paragraph 24; and

d.  All documents that come into BCFD's possession describing or relating to any written or verbal complaint of sexual harassment or related retaliation, made by any complainant, including documents describing or relating to BCFD's investigation and resolution of any such complaint.

37.  The United States may review the County's compliance with this Decree at any time and accordingly will have the right to inspect and copy any documents related to the County's compliance with this Decree upon fifteen (15) days' written notice to the County, without further order from this Court.

## XIII.  PROVISION OF RECORDS TO THE UNITED STATES

38.  For the duration of this agreement, the County will send reports every three months to the United States identifying:

a.  All complaints of sexual harassment and all related complaints of retaliation filed by individuals working at BCFD (inclusive of BCVFA volunteer complaints received by the County from BCVFA) including, at a minimum:

i.  The date of the complaint and the date the complaint was received by BCFD, if different from the date of the complaint;

ii.  Whether the complaint was oral or written;

iii.  A description of the complaint, including the identity, by name and title, of the individuals accused of harassment or retaliation, if known; and

13

       iv.  Any formal or informal report of investigation, including any recommended corrective action or discipline and whether that corrective action or discipline was taken.

   b.  Documentation that each individual received the training required by Paragraphs 13 through 24.

39.   Three (3) months after the Date of Entry of this Decree, the County will provide its first report covering the time period from the Date of Entry of this Decree through three (3) months after the Date of Entry of this Decree.

40.   A report will be due every three (3) months thereafter for the duration of the Decree, covering the three (3) month time period since the previous report. Barring any extension of this Decree, the County will provide the United States ten (10) reports containing the information described above.

## XIV.  DISPUTE RESOLUTION

41.   The Parties will attempt in good faith to resolve informally any dispute concerning the County's compliance with this Decree. Upon request by either Party, the Parties, through their counsel, will make themselves available for a telephone conference to discuss any such dispute within ten (10) days of such a request. If the Parties are unable to reach agreement after informally seeking to resolve the dispute, either Party may move the Court to enforce the Decree provided the moving Party gives at least thirty (30) days written advance notice to the nonmoving Party.

## XV.  MODIFICATION OF THE DECREE

42.   This Decree constitutes the entire agreement and all commitments of the Parties.

43.   The Parties may jointly agree to modifications of the time limits for the specific performance of the non-monetary relief provisions set forth in this Decree without Court

14

approval. The Parties may agree to other modifications of the non-monetary relief provisions of the Decree only with approval of the Court.

44. The Parties may agree to modifications of the time limits for the specific performance of the monetary relief provisions set forth in this Decree in Paragraph 33 without Court approval. The Parties and the Relief Participants may agree to other modifications of the monetary relief provisions of the Decree only with approval of the Court.

## XVI. JURISDICTION OF THE COURT

45. The Court shall retain jurisdiction over this Decree for the purposes of implementing the relief provided herein and resolving any disputes or entering any orders that may be necessary to implement the relief provided herein.

## XVII. DURATION OF CONSENT DECREE AND TERMINATION

46. This Decree will remain in effect for thirty (30) months from the Date of Entry of this Decree. The United States may move the Court to extend the duration of the Decree and the Court may extend the term only upon a showing of good cause for extending the term. Absent an extension, the Decree will expire without further order of the Court at the conclusion of this thirty (30) month period.

## XVIII. GENERAL PROVISIONS

47. If any deadline referenced in this Agreement falls on a weekend or federal holiday, the deadline shall be moved to the next business day.

48. If any provision of this Decree is found to be unlawful, only the specific provision in question will be affected, and the other provisions will remain in full force and effect.

49. If there is any conflict between this Agreement and the requirements of any state or local law or regulation, Federal law and the terms of this Agreement shall control.

50. The Parties will bear their own costs, expenses, and attorneys' fees in this action, including

the costs of compliance or monitoring.

51. Where possible, all documents required to be delivered to the United States under this Decree shall be sent via electronic mail to Shan Shah (shan.shah@usdoj.gov), Sharion Scott (sharion.scott@usdoj.gov), and Sarah Marquardt (sarah.marquardt@usdoj.gov). Where such electronic mail is not possible, documents shall be sent *via overnight delivery* to:

> Shan R. Shah
> Employment Litigation Section Civil Rights Division
> United States Department of Justice 4 Constitution Square
> 150 M Street NE
> Washington, DC  20530

52. Any Party may update mailing or electronic addresses to all other parties without requiring any changes to this Decree.

53. Failure by the United States to enforce any provision or deadline of this Decree shall not be construed as a waiver of its right to enforce any provision or deadline of this Decree.

54. The signatories represent that they have authority to bind the respective parties identified below to the terms of this Decree and that no other party is a necessary signatory to this Decree in order to carry out its obligations.

55. This Decree may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one Decree. The Parties agree to be bound by facsimile signatures.

16

It is so ORDERED, this 6th day of SEPTEMBER, 2023.

_____
The Honorable Richard D. Bennett
United States District Judge


Agreed to and entered into on September 5, 2023 by:


**FOR PLAINTIFF UNITED STATES OF AMERICA:**


EREK L. BARRON
United States Attorney
District of Maryland

*/s/ Sarah Marquardt*
SARAH MARQUARDT, Bar #17294
Assistant U.S. Attorney
District of Maryland
36 S. Charles St., 4th Fl.
Baltimore, MD 21201
Phone: (410) 209-4801
Fax: (410) 962-2310
Sarah.Marquardt@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD
Chief
Employment Litigation Section

CLARE F. GELLER
Deputy Chief
Employment Litigation Section

*/s/ Shan R. Shah*
SHAN R. SHAH, DC Bar #1027229
SHARION SCOTT, DC Bar #1617438
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
150 M Street, N.E.
Washington, DC 20530
Phone (Shah): (202) 598-9621
Phone (Scott): (202) 598-5592
Fax: (202) 514-1005
Shan.Shah@usdoj.gov
Sharion.Scott@usdoj.gov

*Counsel for the United States*

**FOR DEFENDANT BALTIMORE COUNTY, MARYLAND:**

JAMES R. BENJAMIN, JR., Bar No. #27056
County Attorney

*/s/ Glenn T. Marrow*

Glenn T. Marrow, Bar #23731
Deputy County Attorney

*/s/ Dorrell A. Brooks*

DORRELL A. BROOKS, Bar #27058
Special Assistant County Attorney

Baltimore County Office of Law
400 Washington Avenue, Suite 219
Towson, MD 21204
(410) 887-4420
gmarrow@baltimorecountymd.gov

*Counsel for Baltimore County, Maryland*

## EXHIBIT A

### RELEASE OF CLAIMS

I, [insert name], for and in consideration of accepting the relief to be provided to me under the provisions of the Consent Decree entered in *United States v. Baltimore County* on [insert date] in the District Court of Maryland, hereby release and discharge Baltimore County and its officers, officials, elected officials, employees, agents, insurers, and any other person, firm, or corporation charged or chargeable with any responsibility or liability from all legal and equitable claims ("Released Parties") which have been or could have been asserted in the United States' complaint or based on the Commissioner's Charge of discrimination (Charge Number 531-2018-01848).

I understand that the relief to be given to me does not constitute an admission of liability by Baltimore County of any claim raised by me, or on my behalf, nor does it constitute an admission of liability for any wrongdoing or violation of any applicable federal or state law or regulation.

I HAVE READ THIS RELEASE AND UNDERSTAND THE CONTENTS THEREOF. I SIGN THIS RELEASE OF MY OWN FREE ACT AND DEED.

Signed this ___ day of _____, 2023.

_____
Signature

19